# UNITED STATES OF AMERICA

## DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Danielle Masse, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> The City of Providence, ) <br> ) <br> Defendant ) | C.A. No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Parties

1. Danielle Masse is an individual who resides in Providence, Rhode Island.

2. Defendant, City of Providence ("the City"), is a municipal body and is a legal entity which was, at all times relevant to this Complaint, the Plaintiff's employer.

### Jurisdiction

3. Jurisdiction is proper in this Court because this action is brought to remedy discrimination on the basis of sex in the terms, conditions and privileges of employment in violation of 42 U.S.C. § 2000e, also known as "TITLE VII." Because this Court has original jurisdiction over that federal claim, this Court may also exercise pendant jurisdiction over the related state law claims which arise from the same nexus of operative facts.

**Venue**

4. Venue is proper pursuant to 28 U.S.C. § 1391 because all parties reside in Providence, RI and because the nexus of operative facts giving rise to the cause of action occurred in Providence, RI.

**Background**

5. The Providence Fire Department ("the Department") hired its first female employee in 1992.  Since that time, at least three separate juries have found that the City of Providence has sexually harassed and or discriminated against female employees of the Fire Department.

6. The City of Providence employs more than fifteen (15) people.

7. Danielle Masse (hereinafter "the Plaintiff" or "Lieutenant Masse") has been employed by the City as member of the Department since March 2001.

8. Masse is a highly qualified Paramedic with a college degree, substantial paramedic experience from the United States Military and the Providence Fire Department; she holdsmultiple specialized certifications.

9. Lieutenant Masse has always performed the duties of her job at the highest level and to the satisfaction of her employer, earning multiple merit-based promotions, and, other than the events described in this Complaint, has never been subjected to any progressive discipline.

10. In 2010, Lieutenant Masse filed, *pro se*, a Charge of Discrimination with the Rhode Island Commission for Human Rights, docket number RICHR #10ESE275-06/06; EEOC # 16J-2010-00246 ("The 2010 Charge").

11. The Charge did not allege specific counts or legal theories of discrimination but did give a detailed description of multiple incidents in which she was by-passed for promotional opportunities, subjected to retaliation for filing a complaint about being forced to share bathrooms with men, and was subjected to retaliatory, hostile, and abusive behavior from male co-workers up to an including a physical assault. Upon information and belief, none of those wrongdoers were ever disciplined.

12. The City filed a response in which it admitted to several of her allegations but claimed that prompt, remedial measures had been taken by Chief Michael Crawford.

13. The president of the Firefighter's Union filed a complaint with the City EEOC officer at around this time accusing Chief Crawford of engaging in blatantly discriminatory actions against female subordinates.  No action was taken on that complaint.

14. Danielle Masse is a lesbian.

15. The City further averred that "…any tension between [Masse] and her colleagues may be the result of personality differences as opposed to gender discrimination or harassment."

16. That Charge was resolved in favor of the City after Masse, representing herself, failed to comply with technical procedural requirements before the Commission.

17. In the years following, Masse continued to be subjected to insidious comments, jokes, and insults related to her gender and sexual orientation.

18. In the years following, Masse observed another lesbian employee of the Department who was subjected to near constant harassment, including violence and threats of violence, after making a complaint of discrimination and harassment.

19. In the years following and up to the present, Masse has observed that female employees of the Department who engage in consensual sexual relationships with male employees of the Department are treated more favorably than those who do not.

20. In 2009 and 2010, Chief Crawford reported to the City's EEOC Officer that female employees of the Department who engage in consensual sexual relationships with male employees of the Department are treated more favorably than those who do not.

21. As recently as 2016, the City's EEOC Officer has testified under oath that there is a concern that female employees of the Department who engage in consensual sexual relationships with male employees of the Department are treated more favorably than those who do not.

22. Masse was as a material witness on December 23, 2014 on behalf of Lori Franchina in a Title VII claim before this Court: Franchina v. City of Providence, Civil Action Number 1:12-cv-00517-M-LDA.  In that claim, Franchina outlined years of severe and pervasive sexual harassment including but not limited to physical violence against her, rampant insubordination, and conduct that jeopardized the lives of innocent civilians in the care of the Department.

23.  The City argued during the Franchina trial, just like in Masse's 2010 Charge, that any mistreatment endured by Franchina was a result of her inability to get along with her co-workers, not harassment.

24. In April, 2016 a jury of ten unanimously found that Franchina was discriminated against and was subjected to a hostile work environment from 2005-2011 because of her gender. i

4

25. No remedial action was taken by the City during or after Franchina's tenure and Masse was subjected to the same hostile environment from at least 2005 until the present.

26. Less than one week after Masse was disclosed as a witness by Plaintiff's counsel in the Franchina case, the Department notified Masse that they were bringing charges against her.

27. Acting Chief Scott Mello stated in the presence of at least one other Chief that "We need to get Masse. We have to nail Masse on this thing."

28. At least one Chief understood that statement to mean that Chief Mello intended to discredit Masse's testimony on behalf of Franchina, and/or discourage her from testifying on behalf of Lori Franchina, and/or to retaliate against her for testifying on behalf of Lori Franchina.

29. The events upon which the City based the [false and retaliatory] charges against Masse occurred on December 14, 2014.  Masse, while on duty, responded to a single-car accident.  Rhode Island State Troopers also responded to the scene.

30. The driver of the vehicle was found to be in possession of several bags of heroin.

31. The driver of the vehicle was under the influence of heroin while operating the vehicle.

32. Masse, following protocol, transported the driver to the hospital for medical treatment.

33. Masse had no discretion to do anything other than transport the driver to the hospital. Pursuant to Department policy, and the standard of care of her profession, a patient under the influence of powerful narcotics like heroin is incapable of withholding consent for treatment.  Masse and Rhode Island State Police Troopers all observed the individual to have been involved in a massive car-wreck, with blood-shot and pin-point eyes,

5

slurred speech, unsteady gait, inability or refusal to respond to simple questions, and covered in his own vomit. Masse and the Rhode Island State Troopers all concluded that the individual was under the influence of heroin.

34. Masse, based on her education, experience, and training also suspected that the patient may have suffered a traumatic brain injury or, in the alternative, was in danger of overdosing.

35. According to Department polices, the standard of care for EMT's, and common-sense Masse transported the patient to the hospital for observation and treatment.

36. A Rhode Island State Trooper, however, wanted to take the individual into custody on-the-spot and demanded that Masse "get the refusal signed."  "Get the refusal signed," in the field of emergency medical services, means that the Trooper was demanding that she accept the patient's refusal of consent so that he would not be transported to the hospital – allowing the Trooper to take him into police custody on the spot.

37. After a short argument, and in recognition of the Chain of Command at a rescue scene, the Trooper relented and allowed the patient to be transported.

38. Masse called a fire chief to the hospital to complain about the Trooper.  She was told that "we get along with these guys. We don't want any problems."

39. The Trooper also complained about Masse.

40. That complaintwent nowhere until Masse was identified as a witness in the Franchina case, at which point Mello started telling people "We have to get Masse. We need to nail Masse."

6

41. Masse was notified of potential pending charges against her within one week of being disclosed as a witness in the Franchina case and she was preferred on charges within three weeks of her disclosure as a witness.

42. After that the Department escalated the disciplinary proceedings against Masse every time she had an opportunity to testify.

43. By way of example and not limitation, Masse was deposed in September 2015. She was given in-hand service of her disciplinary hearing just days before she was deposed.

44. By way of example and not limitation, Masse was identified as a trial witness in Franchina's pre-trial memorandum filed electronically in late-February 2016.  Her discipline was handed out less than three weeks later and less than one month before she took the stand on behalf of Franchina.

45. The disciplinary hearing was held on November 2, 2015 with Acting Chief Scott Mello presiding and, ultimately, making the decision to discipline.

46. Despite serving as the Chief of the Department preferring charges against Masse, Mello claimed under oath that in his role to "serve as judge" at the disciplinary hearing , that he was required to be neutral, that he was in-fact neutral, and that no conflict of interest existed that would negatively affect his neutrality.

47. However, Mello was present at Masse's deposition in September 2015, less than six weeks prior to acting as a "neutral judge" at the disciplinary hearing.

48. At that deposition, Acting Chief Mello observed Masse give the following testimony :

    a. That she heard another female, who was a plaintiff in a sexual harassment suit, referred to as a "bitch" and a "cunt;"

    b. That a male captain was allowed to retire, without discipline, after getting drunk, making sexual advances towards a female lieutenant, following her into a ladies room, and being dragged out by other males in order to protect the female;

    c. That women who engage in sexual relationships with men on the job are treated more favorably than women who do not;

    d. That male firefighters routinely drink alcohol on the job and, in fact, have a "liquor locker," and that sexual comments, innuendo, and bad behavior escalates when the men are taking cocktails from the liquor locker;

    e. That she had previously filed claims of discrimination with the Commission and, specifically, that she accused Scott Mello himself of discriminating against her;

    f. That she filed multiple internal complaints with the EEO Officer of the City of Providence and that her complaints were ignored;

    g. That a male firefighter had assaulted her and that his personnel record was sanitized of all discipline associated therewith by current Chief of the Department, Steven Pare;

    h. That she had filed another Charge with the Human Rights Commission, which was an administrative prerequisite to this lawsuit, against the Department claiming retaliation against the city and the Department.

49. Mello served as the judge presiding over the disciplinary hearing approximately six weeks later.

50. At that hearing, the City refused to call multiple officers as witnesses, including at least one chief, whom they knew would testify in support of Masse.

51. Then, just prior to the start of Franchina's trial, the City released its opinion, in which Masse was demotedfrom the rank of captain, suspended without pay for ten days, and imposed penalties that will deprive her of tens of thousands of dollars every year and hundreds of thousands of dollars over the course of her career.  In the field of public emergency medical services, which are often run by paramilitary organizations, a permanent letter of reprimand isa deterrent to prospective future employers.  The permanent letter of reprimand all but assures that Captain Masse will have no viable employment opportunities in her chosen vocation for the rest of her life.

52. That discipline is far more severe and drastic than discipline that was imposed on more than twenty-five similarly situated co-workers who were male and/or were not material witnesses testifying in support of a Title VII plaintiff.

53. By way of example and not limitation, the following discipline was meted out to male members of Department preceding Masse's discipline:

    a. Member of the Department arrested for domestic violence was given a temporary letter of reprimand.

    b. Member of the Department left post resulting in an engine company reporting to the wrong address when for a fire. That member was suspended for two days without pay, with suspension of two days held in abeyance and a letter of reprimand place in personnel file for one year.

c. Member of the Department involved in a domestic dispute resulting in criminal charges received a letter of reprimand placed in personnel file for one year.

d. Member of the Department involved in two altercations with a school administrator resulting in police involvement and a restraining order against the member. The member received a three day suspension without pay for the first offense and a five day suspension held in abeyance for the second.

e. Member of the Department physically assaulted a restrained patient with a closed fist, resulting in disciplinary action taken against his professional license by a regulatory authority. No discipline was imposed by the City.

f. Male member of the Department got drunk at a union event, propositioned a female lieutenant, followed her into the ladies room, and was dragged out by several other males in order to protect the female. No discipline was imposed.

g. Member of the Department assaulted a female superior officer resulting in a life time restraining order. No discipline was imposed.

h. Male member of the Department flicked blood and brain matter into a female officer's face. No discipline imposed.

i. Two male members of the Department were found by a Rhode Island Superior Court judge to have given testimony that was "not credible" in defense of a male firefighter who assaulted a female officer. No discipline imposed.

j. Male member of the Department filed a false report of injury and false accusation that a female officer assaulted him. No discipline imposed.

    k. Multiple officers knowingly and intentionally failed to enforce departmental policies in place to enforce a lifetime restraining order imposed against male member of the Department for the protection of a female member of the Department. No discipline imposed.

54. Upon information and belief, Masse was disciplined so harshly because such treatment is in accordance with the well-established plan, pattern, and practice of intentional discrimination and harassment perpetrated by the Providence Fire Department against women and lesbians.

55. Upon information and belief, Masse was disciplined so harshly in retaliation for her complaints about the Department's hostile and unlawful behavior towards women and lesbians in general, and towards Lori Franchina specifically.

56. Upon information and belief, Masse was disciplined so harshly in retaliation for her participation in a lawful court proceeding in which a plaintiff attempted to enforce her rights under Title VII, and in an intentional, concerted effort to discredit her.testimony.

57. The prolonged harassment, discrimination, and retaliatory conduct of the defendant has caused Danielle Masse to suffer extreme emotional distress, anxiety, depression, and humiliation which has been a substantial causing factor of a serious psychological and emotional injury that will require treatment for the rest of her life. She has also suffered lost back wages, lost future wages, and other economic losses.

## Counts

### Count I
### Discrimination Based On Gender In Violation of Federal Law

58. Plaintiff incorporates all previous paragraphs by reference as if restated fully herein.

59. This is a count of discrimination based on gender and/or gender plus sexual orientation in violation of 42 U.S.C. § 2000e-2.

60. The Plaintiff is in a protected class because of her gender.

61. The Defendant discriminated against the Plaintiff, and/or harassed her, because of her gender.

62. As a result, she has suffered and continued to suffer damages.

Count II
Discrimination Based On Sexual Orientation in Violation of Federal Law

63. Plaintiff incorporates all previous paragraphs by reference as if restated fully herein.

64. This is a count of discrimination based on sexual orientation in violation of 42 U.S.C. § 2000e-2.

65. The Plaintiff is in a protected class because of her sexual orientation.  As a lesbian, she belongs to a "subclass" of women.

66. The Defendant discriminated against the Plaintiff, and/or harassed her, because of her sexual orientation.

67. As a result, she has suffered and continued to suffer damages.

Count III
Retaliation, Intimidation, and Coercion Against A Protected Person In Violation of Federal Law

68. Plaintiff incorporates all previous paragraphs by reference as if restated fully herein.

69. This is a claim of retaliation in violation of 42 U.S.C. § 2000e-3(a).

70. The Plaintiff engaged in protected activities when she filed her own Charge of Discrimination and when she participated as a witness in a legal proceeding in which

another female employee attempted to assert her federal civil rights against this Defendant under Title VII.

71. The Defendant did, through its agents, employees, and/or servants retaliate against the Plaintiff and used various methods to harass, intimidated, and coerce the Plaintiff in order to dissuade her from testifying and/or in order to undermine her credibility as a witness against the City.

72. As a result, she has suffered and continues to suffer damages.

## Count IV
### Discrimination Based On Gender In Violation of State Law

73. Plaintiff incorporates all previous paragraphs by reference as if restated fully herein.

74. This is a claim for discrimination based on gender in violation of the Rhode Island Fair Employment Practices Act; R.I. Gen.Laws 1956, § 28-5-7.

75. The Defendant discriminated against the Plaintiff because she is a woman.

76. As a result, the Plaintiff has suffered and continues to suffer damages.

## Count V
### Discrimination Based On Sexual Orientation in Violation of State Law

77. Plaintiff incorporates all previous paragraphs by reference as if restated fully herein.

78. This is a claim for discrimination based on sexual orientation in violation of the Rhode Island Fair Employment Practices Act; R.I. Gen.Laws 1956, § 28-5-7.

79. The Defendant discriminated against the Plaintiff because she is a lesbian.

80. As a result, she has suffered and continues to suffer damages.

## Count VI
### Retaliation, Intimidation, and Coercion Against A Protected Person In Violation of State Law

81. Plaintiff incorporates all previous paragraphs by reference as if restated fully herein.

82. This is a claim for unlawful retaliation in violation of the Rhode Island Fair Employment Practices Act; R.I. Gen. Laws 1956, § 28-5-7.

83. The Plaintiff engaged in protected activities when she asserted her own rights under the Rhode Island Fair Employment Practices Act and when she participated in lawful proceedings in which other women asserted their rights under the Rhode Island Fair Employment Practices Act.

84. The Defendant did, through its agents and servants, retaliate against Plaintiff for engaging in protected activities and/or retaliated against her in order to intimidate, harass, and coerce her in retaliation against her for asserting her own rights, and/or to dissuade her from testifying on behalf of Lori Franchina and/or in order to undermine her credibility when she testified on behalf of Lori Franchina.

**Wherefore**, the Plaintiff respectfully requests that this Court:

a. Enter judgment in her favor on all counts;

b. Award her all damages and remedies available at law and equity including but not limited to back-pay, front-pay, compensation for emotional pain and suffering, attorney's fees, and punitive damages;

c. Award any and all other judgment that this Court deems fair and just.

*Plaintiff demands a trial by jury for all issues so triable*.

Respectfully submitted,
Plaintiff Danielle Masse,
By her Attorneys,

**/s/ John T. Martin**
John T. Martin (Motion for admission, *pro hac vice*, to be filed after case assignment)
BBO # 676344
KJC Law Firm, LLC.
10 Tremont Street
6th Floor
Boston, MA 02108
(617) 720-8447
jmartin@kjclawfirm.com


**/s/ Kevin P. Braga**
Kevin Braga (local counsel)
RI Bar # 8285
The Law Office of Kevin P. Braga
2095 Elmwood Avenue, Suite B
 Warwick, RI 02888
 kevin@kpbragalaw.com

15